

NUMBERS 13-08-257-CR and 13-08-258-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

PEDRO TORRES RICO,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

On appeal from the 265th District Court
of Dallas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Vela**

In separate cases tried together, a jury convicted appellant, Pedro Torres Rico, of attempting to take a weapon from a peace officer, a state jail felony, *see* TEX. PENAL CODE ANN. § 38.14(b), (e) (Vernon Supp. 2008) (appellate court cause number 13-08-257-CR) and of assault on a public servant, a third-degree felony. *See id*. § 22.01(a)(1), (b)(1) (appellate court cause number 13-08-258-CR). The trial court assessed punishment at

180 days' confinement in a state jail facility and two years' imprisonment, respectively. In each case, the trial court suspended the sentences and placed appellant on two years' community supervision.

In thirteen issues, appellant argues: (1) the trial court improperly restricted his right to cross-examine the victim; (2) the trial court failed to instruct the jury on the law of self-defense provided in penal code section 38.14(d); (3) the evidence is legally and factually insufficient to support his convictions; and (4) the evidence established self-defense. We affirm.[1]

## I. Factual Background

### A. *State's Evidence*

On the night of June 6, 2004, Officer Michael May was driving a marked police car in Garland, Texas, equipped with a video camera, which recorded audio and video. He carried a wireless microphone on his belt, which transmitted sound to his car's video camera. At this time, appellant was driving home after drinking beer at his brother's house. When Officer May pulled up to a red light, he saw appellant turn onto Walnut Street and drive the wrong way against oncoming traffic. Officer May turned on his overhead lights, and appellant pulled into his driveway. After Officer May knocked on appellant's driver's side window, appellant got out of his car and put his hands behind his back. Officer May saw appellant "had red watery eyes." Concerned appellant was reaching for a weapon, Officer May told him to come towards him. He refused, and when Officer May grabbed onto appellant's shirt to pull him closer, appellant pushed Officer May backwards. Both

---

[1]This appeal was transferred to this Court from the Fifth Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate courts); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer)

men fell to the ground. When appellant got up, he charged at Officer May.

Officer May testified appellant "grabbed on to my holster for my gun and the holster for my pepper spray." He stated appellant also grabbed "on top of my pepper spray" and "on top of my gun" and started shaking his gun belt. He said appellant was "trying to shake my weapons loose or shake my gun belt off." Officer May tried to push him away and tried "to knock his hand off" to take out his pepper spray, but appellant "stripped" the pepper spray out of Officer May's hand. Appellant continued to shake Officer May's gun belt, causing the holster to come unsnapped and the gun to fall to the ground. Officer May testified that at this point, he had no choice but "to punch him in the head to get him off of me." Appellant responded by punching Officer May two or three times in the face, causing pain to Officer May. Appellant tried to punch him again, but Officer May hit appellant's arm with his flashlight and told him to "'Get back.'" Each time Officer May blocked a punch by hitting appellant's arm with the flashlight, appellant would take a step towards him, causing Officer May to keep stepping backwards until he was in the street. At that point, Officer May struck him in the head with the flashlight.

Appellant then ran toward his house and tried to get inside. Officer May picked up his pepper spray and firearm and tried to grab him. Appellant tried to punch him in the face, but Officer May managed to spray appellant's face with "a little bit" of pepper spray in his facial area. Undaunted, appellant picked up a ladder. Officer May took cover, and appellant threw it in his general direction. When appellant heard other police cars pull up, he laid down. The other officers helped Officer May handcuff appellant. After the incident, appellant was taken to the police station where he gave two breath specimens, both of

which indicated that he was intoxicated.[2]  The trial court admitted into evidence State's exhibit 2, which is the videotape[3] from Officer May's in-car video camera.

Officer May testified his pepper spray is referred to as a "chemical dispensing device."  He stated that but for appellant shaking his belt, the gun would not have fallen to the ground.  He also testified appellant "never had [the gun] in his hand, but the pepper spray he actually grabbed on to it when he stripped it out of my hand.  But he didn't maintain possession of it, he knocked it out of my hand by actually grabbing it."

B. *Appellant's Evidence*

Appellant's brother, Francisco Rico, testified appellant came to his house on June 6, 2004 to watch a televised boxing match.  Francisco and appellant each drank "probably . . . four or five beers at the most."  He said appellant did not generally resist authority and was not an aggressive person.  When appellant left Francisco's house, appellant "was just fine," "walking as a regular person," and "happy as he can be."  After the incident, Francisco talked to appellant about what had happened.  When defense counsel asked Francisco, "You said your brother pulled into the driveway.  What did he tell you happened next?", Francisco replied, "[H]e was still inside the car and that cop came and start [sic] to beat the glass" and "[t]hen he start [sic] open the door and he got handcuffed and then he started getting beat. . . .  Started getting beat by the officer."

Appellant testified that after drinking four or five beers at his brother's house, he left "close to midnight."  He did not see the police car behind him until he was close to his

_____

[2]The trial court admitted into evidence State's exhibit 14, which is a stipulation of evidence stating that appellant "on June 6th, 2004, had a breath alcohol concentration of .116 and .112" "grams of alcohol per 210 Liters of breath. . . ."

[3]Because of the angle at which Officer May parked his car, the camera only captured the audio portion of the encounter between appellant and Officer May.  The prosecutor played the videotape to the jury, and Officer May explained to the jury what they were hearing on the videotape.

4

home. When he pulled into his driveway, he did not roll down his window because the police officer "was hitting the window with that stick that they carry." This scared him, so he started honking his horn to alert his wife, who was in the house. He "saw the barrel of the gun on the glass" and heard the officer tell him to get out of the car. When the officer pointed the gun at appellant's face, he thought the officer was going to kill him. When appellant got out of his car with his hands behind him, Officer May hit him on the neck and "tackled" him. Officer May fell on top of him, and while appellant was face down, Officer May continued to hit him. At one point, appellant got away from Officer May, but Officer May grabbed him and beat him some more.

Appellant denied throwing the ladder at Officer May, and he denied that he took the "Mace" from him. He testified he knew Officer May was a police officer and that he "never handled [Officer May's] gun" and never tried to pull the gun from its holster. When defense counsel asked him, "Did you unlawfully then and there intentionally, knowing or recklessly cause bodily injury to [Officer May]?", he said, "No." He also denied that he either took or attempted to take with force Officer May's firearm or personal protection chemical dispensing device.

After appellant was released from police custody, he went to Baylor Medical Center for treatment and learned that his "brain was swollen." That weekend, he returned to Baylor Medical Center for brain surgery and spent about two weeks in the hospital. He testified that this injury was the result of his being hit on the head.

During appellant's direct examination, defense counsel played State's exhibit 2 (the videotape from Officer May's in-car video camera) to the jury, and appellant explained to the jury what they were hearing on the videotape.

5

After appellant testified, the defense called Officer May as a witness. When defense counsel asked Officer May, "Do you remember any time pulling your gun out telling him [appellant] to get out?", he replied, "No, sir." When defense counsel asked Officer May, "When he got out [of the car] was his speech slurred, bloodshot eyes?", he replied, "Yes, sir." When defense counsel asked him, "Did [appellant] . . . ever grab your firearm at any time?", he replied, "[N]o, sir." Officer May denied he used more force than necessary to arrest appellant.

On re-direct examination, when the prosecutor asked Officer May, "Did the defendant grab your pepper spray when it was on your belt?," he said, "As it was coming out of the holster he grabbed on to it and knocked it from my hand."

Appellant's wife, Teresa Rico, testified appellant respected authority and that he was not a violent person. She had never seen him threaten anybody and said he is not the kind of person who would attack a police officer.

## II. Discussion

A. *Cross-Examination of Officer May*

In issue one, appellant argues the trial court abused its discretion by refusing to allow defense counsel to cross-examine Officer May about prior incidents in which the officer allegedly used excessive force. During cross-examination, defense counsel asked Officer May the meaning of the term "excessive force," to which he said, "You use more force than necessary to effect an arrest." When asked, "Isn't that what occurred in this case?", he stated, "No, sir, no, sir." Then, counsel asked him, "You wouldn't do anything like that?" To this, he replied, "No, I would not." At this point, defense counsel, outside the

6

jury's presence, asked[4] him about prior incidents in which he allegedly used excessive

[4]Outside the jury's presence, defense counsel questioned Officer May as follows:

Counsel:        Officer Mays [sic], have there been complaints filed against you for the use of excessive force and conduct unbecoming of a police officer?

Officer May:    Excessive force, yes; I don't believe conduct unbecoming.

Counsel:        On June 4th—April 4th of 1999, do you recall a claimant made—a claim made against you, filed with the Garland Police Department, for excessive force conduct unbecoming of an officer and profane language, an event which occurred April 4th, 1999?

Officer May:    I cannot recall an event, no, sir.

Counsel:        But it occurred, correct?

Officer May:    If it's in my file then I would say yes, but I don't know for sure.

Counsel:        Okay.  It was in your file when you were asked about it in your deposition, correct?

Officer May:    Can you repeat?

Counsel:        It was in your file and it was asked, those questions were asked of you on your deposition?

Officer May:    They asked questions about certain events, but I don't remember the dates or times, content of each complaint.  I don't remember.

Counsel:        Yes, sir.  You don't recall any of the details about that event though?

Officer May:    Correct.

Counsel:        Okay.  But there was a complaint made against you in regard to an action that occurred on November 15th of 2001, with an individual whose name was Mr. Rivera, with the use of excessive force.  Do you recall that?

Officer May:    No, sir.

Counsel:        So you were questioned about that on your deposition?

Officer May:    Yes, sir.

Counsel:        From your file that was furnished to Mr. Ellis correct, sir?

Officer May:    Correct.

Counsel:        And next question was, there was a complaint made against you in an event occurred on March 2nd—March 23rd of 2002, in regard to a Mr. Castillo, alleging excessive force.  Do you remember or recall that complaint at all?

Officer May:    No, sir.

Counsel:        But in fact it was filed and you were questioned about it on your deposition

7

force.  Counsel told the trial court the proffered testimony was "relevant to show the course of conduct in this case, and I would like to bring that up in front of the jury."  The trial court denied counsel's request to let the jury hear the proffered testimony.[5]

1. *Standard of Review and Applicable Law*

When considering a trial court's ruling on the admission of evidence, we "must determine whether the trial court abused its discretion."  *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  "We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement."  *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

"Relevant facts that occurred before the witness testified at trial are admissible if permitted by the Rules of Evidence or the Confrontation Clause."  *Id*. at 40.  "Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with corresponding rights under state evidentiary rules."  *Hammer v. State*, No. PD-0786-08, 2009 WL 928561, *10-11 (Tex. Crim. App. April 8, 2009).  "Thus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence."  *Id*. at *11.

---

from your personal file from the police department?

Officer May:    Correct.

At this point, counsel told the trial court, "I believe those are pertinent and relevant to show the course of conduct in this case, and I would like to bring that up in front of the jury."  To this, the trial court asked, "That's what you're going to ask him?  After counsel responded affirmatively, the trial court denied counsel's request.

[5]We note defense counsel did not offer the proffered testimony for impeachment purposes.

8

2. *Analysis*

Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence must be material and probative to be considered relevant. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). In order for evidence to be material, it "'must be shown to be addressed to the proof of a material proposition, i.e., 'any fact that is of consequence to the determination of the action.' 'If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial.'" *Id*. If the evidence is material, the proponent must also show "the evidence is probative, i.e., the proffered evidence must tend to make the existence of the fact 'more or less probable than it would be without the evidence.'" *Id*. If the proponent establishes that the evidence is both material and probative, then the evidence is admissible unless it is otherwise barred by the Constitution, statutes, or other rules of evidence. *See* TEX. R. EVID. 402.[6] "It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced." *Layton v. State*, No. PD-408-07, 2009 WL 250080 at *12 (Tex. Crim. App. Feb. 4, 2009). Here, counsel told the trial court the proffered testimony was "relevant to show the course of conduct in this case. . . ."

Evidence of a victim's "pertinent character trait" offered by the accused may be admissible under Rule 404(a)(1). *Evans v. State*, 876 S.W.2d 459, 463 (Tex. App.–Texarkana 1994, no pet.); *see* TEX. R. EVID. 404(a)(1). Rule 405(a) provides, in relevant part: "In all cases in which evidence of a person's character or character trait is

---

[6]*See also Zavala v. State*, No. 13-98-395-CR, 2004 WL 491132 at *3 (Tex. App.–Corpus Christi, Mar. 11, 2004, no pet.) (mem op., not designated for publication).

9

admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. . . ." TEX. R. EVID. 405(a). However, "[r]ules 404(a) and 405(a) specifically disallow particular acts of the victim to demonstrate character." *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998).

Rule 405(b) provides that "in cases in which a person's character or character trait is an essential element of a charge, claim or defense, proof may be made of specific instances of the person's conduct." TEX. R. EVID. 405(b). Appellant's version of the events was that Officer May used excessive force to arrest him and that any action he may have taken against Officer May was in self-defense. However, the "theory of self-defense does not inquire into, as an essential element, the character of the victim." *Evans*, 876 S.W.2d at 464; *Tate*, 981 S.W.2d at 192-93. Thus, because Officer May's character or character trait was not an essential element of a charge, claim, or defense, appellant could not introduce evidence of specific instances of Officer May's conduct. *See* TEX. R. EVID. 405(b); *Evans*, 876 S.W.2d at 464.[7]

Accordingly, the trial court did not err in concluding that the proffered testimony was not material because it did not address any fact of importance to the outcome of the action. *Miller*, 36 S.W.3d at 507. Thus, the proffered testimony is not relevant, and, therefore,

---

[7]In *Evans*, the defendant was convicted of aggravated assault on a police officer, the victim being Officer Sonsel. *Evans v. State*, 876 S.W.2d 459, 461-62 (Tex. App.–Texarkana 1994, no pet.). During trial, the defendant sought to introduce four reports based on complaints by citizens that Officer Sonsel had used excessive or unnecessary force, or had caused physical injury. *Id*. at 464. The defendant argued the reports were admissible because they would help prove Officer Sonsel had aggressive tendencies and was the aggressor in the present case and that the defendant acted in self-defense. *Id*. In holding the reports were not admissible, the appellate court stated, "[T]hese reports consist of recitations of specific instances of Sonsel's conduct and not opinion or reputation testimony." *Id*. The court further stated, "[T]he justification theory of self-defense does not inquire into as an essential element, the character of the victim. Thus, specific instances of Sonsel's conduct were not admissible to prove character." *Id*.

inadmissible.  *See* TEX. R. EVID. 401, 402[8]; *Miller*, 36 S.W.3d at 507.

### 3. *Confrontation Clause*

To the extent appellant claims the Confrontation Clause permits the jury to hear the proffered testimony, we note appellant did not argue to the trial court the Confrontation Clause required admission of the evidence.  *See Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex. Crim. App. 2005) (holding that the appellate court erred in reversing a conviction on Confrontation Clause grounds because defendant did not "clearly articulate" to trial court that the Confrontation Clause demanded admission of the evidence in question).

We hold that whether the proffered testimony was admissible is at least subject to reasonable disagreement.  Thus, the trial court did not abuse its discretion by denying appellant the opportunity to cross-examine Officer May about the prior alleged instances of excessive force.  Issue one is overruled.

### B. *Issues Pertaining to Conviction for Attempting to Take a Weapon from a Peace Officer*

#### 1. *Charge Error*

In issue two, appellant argues that he was egregiously harmed because the charge did not include an instruction on the statutory defense under section 38.14(d) of the penal code, which was raised by the evidence.  *See* TEX. PENAL CODE ANN. § 38.14(d).  When evaluating charge error, we first determine whether there was error in the charge.  *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).  If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused."  *Id*.

---

[8]Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible."  TEX. R. EVID. 402.

Section 38.14(b) of the penal code provides that a person commits an offense "if the person intentionally or knowingly and with force takes or attempts to take from a peace officer, . . . the officer's firearm, nightstick, stun gun, or personal protection chemical dispensing device with the intention of harming the officer or a third person." TEX. PENAL CODE ANN. § 38.14(b). Section (d) provides that "It is a defense to prosecution under this section that the defendant took or attempted to take the weapon from a peace officer, . . . who was using force against the defendant or another in excess of the amount of force permitted by law." *Id*. § 38.14(d).

### *a. Was Appellant Entitled to a Self-Defense Instruction Under Section 38.14(d)?*

The defendant bears the burden of producing some evidence that raises self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). A defense is raised if there is evidence in the record making a prima facie case for the defense. "A prima facie case is that 'minimum quantum of evidence necessary to support a rational inference that [an] allegation of fact is true.'" *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007) (quoting *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex. Crim. App. 1987)). Therefore, a defense is raised by the evidence if there is "some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true." *Id*. at 657-58. "If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible." *Id*. at 658. "But, the evidence must be such that it will support a rational jury finding" with respect to each element of the defense. *Id*. We view the evidence in the light most favorable to the defendant to determine whether it is sufficient to raise the issue of self-

12

defense. *Preston v. State*, 756 S.W.2d 22, 24 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd).

As a general matter, to be entitled to a defensive justification instruction, a defendant must admit the conduct charged in the indictment and then offer evidence justifying the conduct. *Shaw,* 243 S.W.3d at 659 (holding that "a defensive instruction is appropriate only when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct"); *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999); *Withers v. State*, 994 S.W.2d 742, 745 (Tex. App.–Corpus Christi 1999, pet. ref'd).

Here, appellant denied the allegations in the indictment. Therefore, only the State's evidence could possibly have raised the defensive issue. *Johnson v. State*, 715 S.W.2d 402, 405-06 (Tex. App.–Houston [1st Dist.] 1986, pet. ref'd). In his affidavit, which is part of the State's rebuttal evidence, appellant stated when he got out of his car, Officer May beat him in the head with his baton and threw him to the ground. Officer May testified appellant "grabbed on to my holster for my gun and the holster for my pepper spray." He stated appellant also grabbed "on top of my pepper spray" and "on top of my gun" and started shaking his gun belt. He said appellant was "trying to shake my weapons loose or shake my gun belt off." Officer May tried to push him away and tried "to knock his hand off" to take out his pepper spray, but appellant "stripped" the pepper spray out of his hand. Appellant continued to shake Officer May's gun belt, causing the holster to come unsnapped and the gun to fall to the ground. This is some evidence of Officer May's use of excessive force and of appellant's attempt to take Officer May's weapons, requiring the submission of the instruction under section 38.14(d). *See* Tex. Penal Code Ann. §

13

38.14(d).

Even though the evidence supported an instruction under section 38.14(d), we do not find appellant suffered egregious harm. When, as in this case, an accused complains of an unobjected-to error in the charge, "he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171. The error must "go to the very basis of the case, deprive the accused of a valuable right," or "vitally affect his defensive theory." *Id*. at 172. (Internal citation omitted). The degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). "Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis." *Ellison v. State,* 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is determined "in light of the entire charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

b. *Harm Analysis*

(I). *Entire Charge*

The charge included a self-defense instruction[9] under penal code section 9.31(b),

---

[9]Specifically, the charge instructed the jury:

The use of force against another is not justified to resist an arrest or search that the defendant knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under the following circumstances:

The use of force to resist an arrest or search is justified:

(1) if, before the defendant offers any resistance, the peace officer uses or attempts

14

(c)(1), and (c)(2).  *See* Tex. Penal Code Ann. § 9.31(b), (c)(1), (c)(2).  Furthermore, the

charge:  (1) instructed and applied the law of the particular offense to the facts of the case;

(2) correctly placed the burden on the State to prove each element of the offense beyond

a reasonable doubt;[10] and (3) instructed the jury appellant was not required to prove his

innocence or to produce any evidence.  The application paragraph included the following

instruction:  "Unless you so find beyond a reasonable doubt, or if you have a reasonable

doubt thereof, you will acquit the defendant of attempting to take a weapon from a peace

officer and say by your verdict not guilty."  The charge further instructed the jury that:  "In

the event you have a reasonable doubt as to the defendant's guilt after considering *all the*

*evidence before you, and these instructions*, you will acquit him and say by your verdict not

_____

to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the defendant reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

Now, therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Pedro Torres Rico, resisted an arrest or search that the defendant knew was being made by a peace officer, namely M. May, regardless of whether or not the arrest or search was unlawful, by grabbing or by shaking M. May's firearm or personal protection chemical dispensing device, and you further find or have a reasonable doubt thereof, that before the defendant offered any resistance, if any, the peace officer used or attempted to use greater force than necessary to make the arrest or search, and you further find, or have a reasonable doubt thereof, that the defendant reasonably believed that the force when and to the degree used, if it was, was immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary, then you will find in favor of the defendant's plea of self-defense and find the defendant not guilty.

If you find and believe from the evidence beyond a reasonable doubt that at the time and place in question the peace officer, M. May, did not use or attempt to use greater force than was necessary to effect the arrest or search of the defendant, or that the defendant did not reasonably believe the force used by the defendant, if any, was immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary, then you will find against the defendant on his plea of self-defense.

[10]Specifically, the charge stated: "The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant"

15

guilty." (emphasis added).

We presume the jury followed the trial court's instructions. *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)). We conclude that even though the trial court erred by failing to charge the jury under section 38.14(d), the charge as a whole adequately conveyed to the jury that it was required to acquit appellant if it had a reasonable doubt the State failed to prove all elements of the offense. *See Zuliani,* 97 S.W.3d at 594 (holding that to meet its burden of persuasion to show defendant did not act in self-defense, the State was required to prove its case beyond a reasonable doubt).

(ii). *State of the Evidence and Contested Issues*

Appellant testified that Officer May was the aggressor, that he resisted Officer May because Officer May continued to beat him, that he feared for his life, and that after the incident, he had to have brain surgery. The State controverted appellant's self-defense claim by showing that appellant charged at Officer May and attempted to take his weapons. The State also showed that Officer May did not strike appellant until after appellant had dislodged Officer May's pepper spray and his firearm. When Officer May punched him in the head, appellant responded by punching Officer May two or three times in the face. In order to avoid being punched again, Officer May hit him in the head with his flashlight. Officer May denied that he used excessive force against appellant. After the incident, appellant gave two breath specimens, which showed he was intoxicated. The jury's decision turned on credibility and in our view was not influenced by any error in the charge.

(iii). *Arguments of Counsel*

During closing argument, one of the prosecutors explained the law of self-defense to the jury and argued appellant was not telling the truth about what had happened and

16

that Officer May was telling the truth about what had happened. The other prosecutor argued that Officer May did not use excessive force.

In their closing arguments, defense counsel argued Officer May was the aggressor and that appellant had testified truthfully. One of appellant's counsel argued appellant had the right to defend himself against the use of excessive force.[11]

(iv). *Other Relevant Information*

The record does not reflect the jury was confused about the applicable burden of proof or about the State's burden to prove all elements of its case beyond a reasonable doubt.

---

[11]Counsel argued that appellant knocked the pepper spray from Officer May's hand "[o]ut of self-defense for God's sake. That stuff is nasty. Okay?" He further argued:

> So when you look at the assault of a public servant here, the use of force to resist an arrest or a search is justified if the peace officer uses or attempts to use greater force than necessary to make the arrest or to the degree the defendant reasonably believes. So it's a reasonable belief standard what he reasonably believes occurring to him at the time in question, and there's nothing here that would show this man ever, ever at any time had care, custody and control, or attempted the care, custody and control of the weapons or his Mace, ever, other than to keep from getting shot and to keep from getting sprayed on something that was very much uncalled for. People have an absolute right to defend themselves even against a police officer if they're using excessive force.

> * * * *

> So when and to the degree the defendant, citizen accused, reasonably believed the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. Reasonable belief means a belief that would be held by an ordinary and prudent person, that's you, that's Mr. Rico [appellant], in the same or similar circumstance as the defendant.

> In this case you would have an absolute right to come here and complain about what was happening and defend yourself when someone takes advantage of you as a citizen. . . .

> * * * *

> Because when you're trying to defend yourself, you have an absolute right to do so, as in the charge, if you believe from the evidence that there is excessive force here, which I believe there is a reasonable deduction from the evidence there is. Then so what? Was there an aggravated assault or was there assault on a public servant? There is not. Okay?

17

c. *Application*

Based on our review, appellant has not shown the court's failure to charge the jury under section 38.14(d) affected the very basis of the case, deprived him of a valuable right, or vitally affected his defensive theory. Even though the charge did not include the law of self-defense as it pertained to section 38.14(d), it did instruct the jury on the elements of self-defense with respect to penal code section 9.31(b). Appellant relied on self-defense as a defensive theory, and urged the jury to consider the issue of self-defense. Considering the jury was given a general instruction on the law of self-defense, and appellant discussed self-defense during the trial, we conclude appellant did not suffer egregious harm. Issue two is overruled.

2. *Sufficiency of the Evidence*

a. *Legal Sufficiency*

In issue four, appellant argues the evidence is legally insufficient to prove he intentionally or knowingly took or attempted to take Officer May's firearm. In issue six, he argues the evidence is legally insufficient to prove he intentionally or knowingly took or attempted to take the officer's personal protection chemical dispensing device.

(I). *Standard of Review*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanchez v. State*, 275 S.W.3d 901, 902 n.2 (Tex. Crim. App. 2009). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S.

18

at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

(ii). *Applicable Law*

Section 38.14 of the penal code provides that a person commits an offense "if the person intentionally or knowingly and with force takes or attempts to take from a peace officer, . . . the officer's firearm, . . . or personal protection chemical dispensing device with the intention of harming the officer or a third person." TEX. PENAL CODE ANN. § 38.14(b); *Chadwick v. State*, 277 S.W.3d 99, 106 (Tex. App.–Austin 2009, no pet.). In this case, the charge's application paragraph instructed the jury to convict appellant of the offense if it found that he "intentionally or knowingly, with force, attempt to take from a peace officer, to-wit; M. May, the officer's firearm or personal protection chemical dispensing device, by grabbing or shaking said firearm or personal protection or chemical dispensing device with the intention of harming said officer, . . . ." The jury returned a general verdict of guilty.

Because the term "take" is not defined in the penal code, we use the common, usual meaning of the word. *See Garcia v. State*, 887 S.W.2d 846, 859 (Tex. Crim. App. 1999) ("Words which are not defined statutorily are to be given their usual meanings, and no specific instructions are necessary."). The most commonly recognized definitions of the word "take" are to "get into one's hands or into one's possession, power, or control by force or stratagem"; "to lay or get a hold of with arms, hands, or fingers"; or "to seize or capture

19

physically." *See* WEBSTER'S 3RD INT'L DICTIONARY 2329-30 (1981).[12] An accused is presumed to know the officer was a peace officer if he was wearing his uniform or badge or if he had identified himself as a peace officer to the accused. *See* TEX. PENAL CODE ANN. § 38.14(c). Proof of knowledge or intent is an inference that may be drawn by the factfinder both from direct evidence and from evidence of the circumstances surrounding the act. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that intent may be inferred from circumstantial evidence such as the words, acts, or conduct of the accused); *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (holding that jury may infer intent from any facts in evidence); *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996) (knowledge is inference drawn by trier of fact from all circumstances). Therefore, a jury can infer knowledge or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986).

(iii). *Analysis*

In this case, a rational jury could have determined the following from the evidence: (1) appellant was aware Officer May was a peace officer; (2) appellant grabbed on to Officer May's holster for his gun and the holster for his pepper spray; (3) appellant grabbed on top of his pepper spray and on top of his gun and started shaking Officer May's gun belt; (4) appellant was trying to shake his weapons loose; (5) when Officer May tried to take out his pepper spray, appellant grabbed on to it and "stripped" it out of his hand; (6) by shaking Officer May's gun belt, appellant caused the gun holster to come unsnapped and

---

[12]*See also Pryor v. State*, nos. 05-03-00794-CR, 05-03-00795-CR, 2004 WL 728867 at *3 (Tex. App.–Dallas, Apr. 6, 2004, pet. ref'd) (not designated for pub.) (defining "take" in context of penal code section 38.14 and rejecting defendant's argument that "take" meant to "remove from the other's possession").

the gun to fall to the ground; (7) the pepper spray attached to Officer May's gun belt is referred to as a "chemical dispensing device."

To the contrary, appellant's evidence showed: (1) he did not attempt to take Officer May's firearm or pepper spray; (2) he did not resist authority and was not aggressive; (3) when appellant left his brother's house, appellant "was just fine," "walking as a regular person," and "happy as he can be"; and (4) he was not the kind of person who would attack a police officer.

After viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could conclude appellant, with force, attempted to take Officer May's firearm or personal protection chemical dispensing device by grabbing or shaking the firearm or personal protection chemical dispensing device with the intention of harming him. Therefore, we hold the evidence is legally sufficient to support the conviction. Issues four and six are overruled.

b. *Factual Sufficiency*

In issue five, appellant argues the evidence is factually insufficient to prove he intentionally or knowingly took or attempted to take Officer May's firearm. In issue seven, he argues the evidence is factually insufficient to prove he intentionally or knowingly took or attempted to take the officer's personal protection chemical dispensing device.

(I). *Standard of Review*

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict;" or (2) "considering conflicting

21

evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, the court must defer to the jury's findings. *Id*. (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.2d at 414). "First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict." *Id*. (citing *Watson*, 204 S.W.3d at 414). Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain*, 958 S.W.2d at 407). Although the verdict is afforded less deference during a factual sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*. (citing *Cain*, 958 S.W.2d at 407). "Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict." *Id*. (citing *Watson*, 204 S.W.3d at 414).

(ii). *Analysis*

After reviewing all of the evidence in a neutral light, we conclude the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-17. Therefore, we hold the evidence is factually sufficient to support the conviction. *See id.* Issues five and seven are overruled.

4. *Sufficiency of the Evidence to Establish the Defense Under Section 38.14(d)*

In issue three, appellant argues the evidence is sufficient to establish the defense provided for in section 38.14(d) of the penal code. Specifically, he argues the evidence

22

affirmatively established that any actions he may have taken involving Officer May's gun, pepper spray, or both were taken in defense of and in reaction to Officer May's use of excessive force.

a. *Law of Self-Defense*

Section 38.14(d) provides that "[i]t is a defense to prosecution under this section that the defendant took or attempted to take the weapon from a peace officer, . . . who was using force against the defendant or another in excess of the amount of force permitted by law." TEX. PENAL CODE. ANN. § 38.14(d).  A defendant has the burden of producing some evidence to support a self-defense claim.  *Zuliani*, 97 S.W.3d at 594.  Once the defendant produces this evidence, the State has the burden of persuasion to show the defendant did not act in self-defense.  *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.3d at 913-14.  To meet this burden, the State is not required to produce evidence to disprove self-defense but only to prove its case beyond a reasonable doubt.  *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913.  "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory."  *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

b. *Standards of Review*

In a review of the legal sufficiency of the evidence to support the jury's rejection of a self-defense claim, in addition to our usual review for legal sufficiency of the evidence, we ask whether any rational jury would have found, beyond a reasonable doubt, against the defendant on the self-defense issue.  *Saxton,* 804 S.W.2d at 914; *Williams v. State*, 226 S.W.3d 611, 616-17 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

When reviewing factual sufficiency to support the rejection of a self-defense claim, we review all the evidence in a neutral light and ask whether the State's evidence taken

23

alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani*, 97 S.W.3d at 595; *see Watson*, 204 S.W.3d at 416-17. In conducting this review, we bear in mind that the fact-finder may draw reasonable inferences, is the sole judge of the weight of the evidence and the credibility of the witnesses, and may accept or reject any or all of the evidence produced by the parties. *Swearingen v. State*, 101 S.W.3d 89, 92 (Tex. Crim. App. 2003).

c. *Analysis*

Appellant testified Officer May was the aggressor, that he resisted Officer May because Officer May continued to beat him, and that he feared for his life. After the incident, appellant had to have brain surgery. The State controverted appellant's self-defense claim by showing that appellant charged at Officer May and attempted to take his weapons; i.e., he grabbed onto his holster for his gun and the holster for his pepper spray and started shaking his whole belt. Officer May stated appellant was trying to shake his weapons loose or shake his gun belt off. The State also showed that Officer May did not strike appellant until after appellant had dislodged Officer May's pepper spray and his firearm. When Officer May punched him in the head, appellant responded by punching Officer May two or three times in the face. In order to avoid being punched again, Officer May hit him in the head with his flashlight. Officer May denied he had used excessive force against appellant. This testimony and appellant's version of the incident raised fact issues for the jury about whether Officer May used excessive force. Resolution of the fact issues was within the jury's province. *See Saxton*, 804 S.W.2d at 914.

After considering the evidence under the legal and factually sufficiency standards, we conclude that even if the trial court had charged the jury under section 38.14(d), the

evidence would have been legally and factually sufficient to have supported the jury's implied finding on the issue of self-defense and that the evidence did not affirmatively establish the defense. Issue three is overruled.

5. *Sufficiency of the Evidence to Establish the Self-Defense Instruction Under Penal Code Section 9.31(b)*

In issue eight, appellant argues the State failed in its burden of persuasion to refute his proof of self-defense; hence, the evidence is legally insufficient to show he did not act in self-defense. In issue nine, he argues the evidence is factually insufficient to show he did not act in self-defense.

Section 9.31(b) provides that the use of force against another is not justified to resist an arrest or search that the actor knows is being made by a peace officer unless (1) "if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search," and (2) "when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary." TEX. PENAL CODE ANN. § 9.31(b), (c)(1), (2). We have previously determined the evidence was legally and factually sufficient to support the jury's finding of guilty. Appellant's self-defense evidence was controverted by Officer May's testimony that appellant was the aggressor and that Officer May did not use excessive force. The evidence raises fact issues for the jury about whether appellant's use of force against Officer May was justified to resist the arrest. Resolution of fact issues is within the jury's province. *See Saxton*, 804 S.W.2d at 914.

After considering the evidence under the legal sufficiency standard, we conclude the evidence is legally sufficient to support the jury's implied finding on the issue of self-

25

defense. After viewing all the evidence in a neutral light, including appellant's testimony in support of his self-defense claim, we conclude the State's evidence is not too weak to support the jury's implied finding against appellant's self-defense issue. We also conclude the jury's finding is not against the great weight and preponderance of the evidence. We hold the evidence is legally and factually sufficient to support the jury's implied finding on the issue of self-defense. Issues eight and nine are overruled.

C. *Issues Pertaining to Conviction for Assault on a Public Servant*

1. *Sufficiency of the Evidence*

    a. *Legal Sufficiency*

In issue ten, appellant argues the evidence is legally insufficient to prove he intentionally, knowingly, or recklessly assaulted a public servant.

    (I). *Applicable Law*

To prove the offense of assault on a public servant, the State must prove that: (1) appellant intentionally, knowingly, or recklessly caused bodily injury to Officer May; (2) Officer May was a public servant; (3) appellant knew Officer May was a public servant; and (4) Officer May was lawfully discharging his official duties at the time of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1); *Chadwick*, 277 S.W.3d at 105; *see also Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon Supp. 2009).

In this case, the charge's application paragraph allowed the jury to convict appellant if they found, in relevant part, he:

> intentionally, knowingly or recklessly cause[d] bodily injury to another, namely M. May, hereinafter called complainant, by grabbing or by striking complainant with defendant's hand and said complainant was at the time of

26

said offense a public servant, namely, a City of Garland peace officer, engaged in the lawful discharge of an official duty and said defendant knew that the complainant was a public servant, . . . .

(ii). *Analysis*

In this case, a rational jury could have determined the following from the evidence: (1) appellant struck Officer May with his hand two or three times in the face; (2) this caused physical pain to Officer May; (3) at the time of the assault, Officer May was on duty as a City of Garland police officer, who was engaged in the lawful discharge of an official duty; (4) that at the time of the assault, Officer May was in uniform and wearing his badge; and (5) appellant was aware Officer May was a police officer.

To the contrary, appellant's evidence was that: (1) he did not strike, grab, or otherwise assault Officer May; (2) he did not resist authority and was not aggressive; (3) when appellant left his brother's house, appellant "was just fine," "walking as a regular person," and "happy as he can be;" and (4) he was not the kind of person who would attack a police officer

To the extent the evidence conflicted, it was within the jury's province to resolve the conflicts. *See Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002). After viewing the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to support the conviction for assault on a public servant. Issue ten is overruled.

b. *Factual Sufficiency*

In issue eleven, appellant argues the evidence is factually insufficient to prove he intentionally, knowingly, or recklessly assaulted a public servant. After reviewing all of the evidence in a neutral light, we conclude the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust, or that the verdict

is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-17. Therefore, we hold the evidence is factually sufficient to support the conviction for assault on a public servant. Issue eleven is overruled.

2. *Sufficiency of the Evidence to Establish Self-Defense*

In issue twelve, appellant argues the State failed in its burden of persuasion to refute his proof of self-defense; hence, the evidence is legally insufficient to show he did not act in self-defense. In issue thirteen, he argues the evidence is factually insufficient to show he did not act in self-defense. For this offense, the trial court instructed[13] the jury under the law of self-defense provided in penal code section 9.31(b), (c)(1)-(2). *See* TEX. PENAL CODE ANN. § 9.31(b), (c)(1)-(2).

---

[13]The trial court instructed the jury as follows:

The use of force against another is not justified to resist an arrest or search that the defendant knows is being made by a peace officer, or by a person, acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under the following circumstances:

The use of force to resist an arrest or search is justified:

(1) if, before the defendant offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the defendant reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.;

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

Now, therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Pedro Torres Rico, resisted an arrest or search that the defendant knew was being made by a peace officer, namely M. May, regardless of whether or not the arrest or search was unlawful, by grabbing or by striking M. May with the defendant's hand, and you further find or have a reasonable doubt thereof, that before the defendant offered any resistance, if any, the peace officer used or attempted to use greater force than necessary to make the arrest or search, and you further find, or have a reasonable doubt and you further find, or have a reasonable doubt thereof, that the defendant reasonably believed that the force when and to the degree used, if it was, was immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary, then you will find in favor of the defendant's plea of self-defense and find the defendant not guilty.

28

We have previously determined the evidence was legally and factually sufficient to support the jury's guilty verdict for assault on a public servant. The evidence to support appellant's defense of self-defense and the State's contrary evidence has been previously discussed. The evidence raises fact issues for the jury about whether appellant's conduct of striking Officer May in the face was justified to resist the arrest. Resolution of fact issues is within the jury's province. *See Saxton*, 804 S.W.2d at 914. After considering the evidence under the legal sufficiency standard, we conclude the evidence is legally sufficient to support the jury's implied finding on the issue of self-defense.

After viewing all the evidence in a neutral light, including appellant's testimony in support of his self-defense claim, we conclude the State's evidence is not too weak to support the jury's implied finding against appellant's self-defense issue. We also conclude the jury's finding is not against the great weight and preponderance of the evidence. Therefore, we hold the evidence is factually sufficient to support the jury's implied finding on the issue of self-defense. Issues twelve and thirteen are overruled.

### III. Conclusion

We affirm the trial court's judgments.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 11th day of June, 2009.